**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSEPH P. SCHIMMINGER, : | |
| : | |
| Plaintiff, : | Civil No. 10-6765 (RMB) |
| : | |
| v. : | |
| : | **OPINION** |
| CAMDEN COUNTY CORRECTIONAL : | |
| FACILITY'S CSLS PROGRAM, : | |
| et al., : | |
| : | |
| Defendants. : | |

**APPEARANCES:**

    JOSEPH P. SCHIMMINGER, Plaintiff pro se
    401 e. Gibbsboro Road
    Apt. 604
    Lindenwold, New Jersey 08012

**BUMB**, District Judge

    Plaintiff, Joseph P. Schimminger, a state inmate confined at the Camden County Correctional Facility in Camden, New Jersey, at the time he submitted the above-captioned Complaint for filing, seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

    At this time, this Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether the

Complaint should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed without prejudice.

## I.   BACKGROUND

Plaintiff, Joseph P. Schimminger ("Schimminger"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: the Camden County Correctional Facility ("CCCF") CSLS Program; Lieutenant V. Hilton; Officer Accardo; and Officer Boardley.  (Complaint, Caption and ¶¶ 4.b through 4.c).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Schimminger alleges that the defendants have violated his Eight and Fourteenth Amendment rights by causing plaintiff to be held without due process and "intentionally subjecting [plaintiff] to cruel and unusual punishment for [his] unlawful detainment."  (Compl., ¶ 4b).  Plaintiff states that, on January 24, 2010, he was sentenced to serve a 365 day sentence, which was to be served pursuant to the CSLS Program.[1]  Consequently, he was

---

[1]  Plaintiff does not identify what the acronym "CSLS" means.

2

permitted to serve his sentence on weekends only, and he began service of his sentence on February 13, 2010. On June 3, 2010, plaintiff states that he was seriously injured on his job and was taken to the hospital in Berlin, New Jersey. He had x-rays taken that revealed plaintiff had sustained a broken collar bone. The doctor ordered that plaintiff's arm be immobilized with a special sling, and he was given prescription medication and a medical note upon his release from the hospital on June 4, 2010. Plaintiff reported in person to the CSLS Program and showed Officer Boardley his medical note and injury. Boardley allegedly instructed plaintiff to call out each day that plaintiff was to report to serve his sentence under the CSLS Program. Plaintiff further alleges that Boardley told him that he was excused from the CSLS Program and told to go home. (Compl., ¶ 6).

Schimminger states that he followed the instructions he received and called out each weekend (both Saturday and Sunday) for the next six weeks while he recovered from his injury. Plaintiff returned to the CSLS Program on July 24, 2010, stating that, while his arm still hurt, he could perform his duties. Plaintiff signed in at 8:00 a.m. and put on his work vest and waited until the work crews were assigned. About one hour after plaintiff had reported to the CSLS Program, Officers Hinton and Accardo approached plaintiff and placed him in handcuffs. Schimminger was then brought to the CCCF, where he was processed and placed in a seven-day lock down. He states that he had asked

3

about seeing a judge and was told that he would see one.  On July 28, 2010, plaintiff was placed in general population at CCCF.  Schimminger states that he wrote repeated requests for reinstatement into the CSLS Program, but did not receive any response until August 4, 2010.  (Compl., ¶ 6).

On August 4, 2010, Lt. Hinton wrote to plaintiff, stating that plaintiff had been informed in May 2010 to report his medical condition to Judge Pugliese so that his CSLS obligation could be properly suspended.  Hinton further informed plaintiff that he should have his counsel present all documentation with his request for reinstatement to the CSLS Program in a letter to Judge Pugliese.  Finally, Hilton told plaintiff that he would not be in his predicament if he had followed her instructions initially.  (Compl., ¶ 6).

Schimminger states that he began to write letters to the courts and he began to speak to a private attorney about what to do.  Plaintiff also wrote to the Camden County Public Defender's Office and the Gloucester County Public Defender's Office.  He wrote to Judge Pugliese as well.  Schimminger alleges that he has not had any response to his letters.  Accordingly, Schimminger filed a grievance against the CSLS Program for violating him.  He also wrote to the American Civil Liberties Union ("ACLU") on October 29, 2010.  On November 8, 2010, plaintiff received a letter from Judge Randall Freeman, which letter stated that plaintiff's case is in the jurisdiction of Camden County.

Plaintiff sent the letter from Judge Freeman to Lt. Hilton. (Compl., ¶ 6).

On January 14, 2011, Schimminger wrote to this Court asking that he be permitted to assert new grounds against the defendant CCCF CSLS Program. Plaintiff states that, on October 30, 2010, he was called to go to the sergeant in admissions at CCCF, who offered to reinstate plaintiff in the CSLS Program. Schimminger readily agreed and went back to his cell block. When plaintiff did not hear from Sergeant Boyd, he tried to contact him. Schimminger found out that Boyd told his family that he never made any such offer. On December 30, 2010, plaintiff again was called down to admissions and again was questioned about whether he wanted to be reinstated in the CSLS Program. An officer from the CSLS Program allegedly asked plaintiff about the days he had missed without calling out. Plaintiff apologized and asked to be reinstated. After he failed to hear from the CSLS Program for two weeks, Schimminger's family contacted Sgt. Boyd, who stated that he had no knowledge of any offer for plaintiff to be reinstated in the CSLS Program. Schimminger contends that these two incidents constitute cruel and unusual punishment. (Docket entry no. 3).

Plaintiff seeks to be released from CCCF and reinstated in the CSLS Program. He also asks to be compensated for the time that he was confined from July 24, 2010 to the present. (Compl., ¶ 7).

5

On April 8, 2011, plaintiff wrote to the Court to advise that he was to be released from the CCCF in several days. (Docket entry no. 4).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower

6

Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights. Id. The Court examined Rule

7

8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[2]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

---

[2]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

8

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court

---

[3] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Plaintiff appears to bring this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

10

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   ANALYSIS

In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release.  411 U.S. at 476.  The prisoners did not seek compensatory damages for the loss of their credits.  411 U.S. at 494.  The Court held that "when a state prisoner is challenging the very fact or duration of his physical

imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Id. at 500. See also Heck v. Humphrey, 512 U.S. 477 (1994)(prisoner can not challenge the constitutionality of his conviction in a suit for damages only under § 1983, a form of relief not available through a habeas corpus proceeding).

In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court applied the lessons of Preiser and its progeny to a state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits. Again, the Court emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment. 520 U.S. at 646-8.

In Wilkinson v. Dotson, 544 U.S. 74 (2005), the Supreme Court applied these principles to hold that claims challenging the validity of general parole procedures are cognizable under § 1983, so long as the prisoner does not seek injunctive relief ordering his immediate or speedier release into the community, but rather seeks merely a new eligibility review or parole hearing.

12

"Considering Heck [v. Humphrey, 512 U.S. 477 (1994)] and summarizing the interplay between habeas and § 1983 claims, the Supreme Court recently explained that, 'a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration.'" Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006)(quoting Wilkinson, 544 U.S. at 81-82)(emphasis in original).

Here, Schimminger plainly seeks his release from the CCCF and reinstatement in the CSLS Program. He also seeks damages for the time that he was incarcerated as a result of the revocation of his participation in the CSLS program (for failure to report his hospitalization and injury to the court and the CSLS Program as required. These claims are barred by Preiser and Heck. See, e.g., Harris v. Milgram, 2010 WL 760584 (D.N.J. Mar. 2, 2010)(Kugler, J .)("[Plaintiff's] claim that his parole was revoked in violation of his constitutional rights is precisely the type of claim for damages barred by the Preiser/Heck/Balisok line of cases. A determination that he was deprived of liberty without due process would necessarily imply the invalidity of the parole revocation."). Schimminger cannot obtain the relief he seeks in a § 1983 action. Further, any claim challenging his incarceration or seeking his release from jail must be brought as

13

a petition for writ of habeas corpus under 28 U.S.C. § 2254 following exhaustion of his state court remedies regarding his alleged wrongful expulsion from the CSLS Program.

Therefore, this Complaint will be dismissed, without prejudice, at this time.  Alternatively, it would appear that plaintiff's claim for release is rendered moot by his release from jail and his reinstatement in the CSLS Program.

### IV.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed without prejudice, in its entirety, as against all named defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.  An appropriate order follows.


s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: July 19, 2011

14